140 So.2d 73 (1962)
The HERTZ CORPORATION, a Corporation, Appellant,
v.
Alice A. HELLENS, Appellee.
No. 2593.
District Court of Appeal of Florida. Second District.
April 11, 1962.
James D. Druck, McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellant.
G.H. Martin and L. Fred Austin, Fort Lauderdale, for appellee.
ALLEN, Acting Chief Judge.
The Hertz Corporation, appellant, was the defendant below and appeals from a judgment in favor of the plaintiff-appellee entered pursuant to a jury verdict in favor of the plaintiff for damages arising from an automobile accident.
The only issue raised for appellate review concerns the effect of a covenant not to sue, pursuant to a settlement between the plaintiff and the defendant, Eli Bordetsky, who was the driver of the car which injured the plaintiff-appellee. The Hertz Corporation was the owner of the said car.
The appellant takes the position that an act passed during the 1957 session of the Florida Legislature, which authorized the releasing of one tort-feasor without its effect being to release all tort-feasors and providing for a set-off in an action against other tort-feasors was not applicable in an action brought against vicarious tort-feasors.
We hold that the act applies to all tort-feasors, whether joint or several, including vicarious tort-feasors.
Chapter 57-395, Laws of Florida, 1957, provides:
"AN ACT to permit the releasing of one tort-feasor without its effect *74 being to release all tort-feasors, and providing for set-off in actions against other tort-feasors.
"Be it Enacted by the Legislature of the State of Florida:
"Section 1. A release or covenant not to sue as to one tort-feasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tort-feasor who may be liable for the same tort or death.
"Section 2. At any trial, if any defendant shall make it appear to the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm or corporation in partial satisfaction of the damages sued for, the court shall, at the time of rendering judgment, set-off such amount from the amount of any judgment to which the plaintiff would be otherwise entitled and enter judgment accordingly.
"Section 3. The fact of such a release or covenant not to sue, or that any defendant has been dismissed by order of the court, shall not be made known to the jury."
It will be observed from the above act, which appears in the Florida Statutes as § 54.28, F.S.A., that it does not exempt or except joint tort-feasors.
If a plaintiff settles with one of two or more tort-feasors, Section 2 of the above act directs the court to set off the amount of that settlement against any judgment recovered against the remaining "non-released" tort-feasors. The appellant in the instant case apparently did not request a set-off.
The one who entrusts the operation of an automobile to another is vicariously liable to a person injured by the negligence of the party to whom the automobile was entrusted.
Since the Supreme Court of Florida in the case of Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, enunciated the doctrine that an automobile in its operation is a dangerous instrumentality, the owner is vicariously liable for the negligence of the driver. The legal relationship of the owner to the driver in this context is equivalent to that of master and servant, principal and agent or bailor and bailee. Even though he has committed no tortious act, the owner of an automobile is by law charged as a tort-feasor when, with his consent, his automobile is negligently operated by another resulting in injury to persons or property.
In the case of Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832, the Supreme Court, in its opinion, quoted from Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, which in turn quoted from Barmore v. Vicksburg, S. & P.R. Co., 85 Miss. 426, 38 So. 210, 70 L.R.A. 627, as follows:
"`The servant is empowered by the master to discharge certain duties, and it is incumbent upon him to exercise the same care and attention which the law requires of the master; and, if that care and attention be about the management and custody of dangerous appliances, the master cannot shift the responsibility connected with the custody of such instruments to the servant to whom they have been intrusted, and escape liability therefor. This rule arises from the absolute duty which is owing to the public by those who employ in their business dangerous agencies or appliances, engines, or instruments  liable, if negligently managed, to result in great damage to others.'
"The disobedience, or contractual violations, of one to whom such an instrumentality is entrusted can no more logically exonerate a bailor than a `master' or employer:
"`Says the Supreme Court of the United States: "The intrusting such a *75 powerful and dangerous engine as a locomotive, to one who will not submit to control, and render implicit obedience to orders, is itself an act of negligence the `causa causans' of the mischief; while the proximate cause, or the ipsa negligentia which produces it, may truly be said, in most cases to be the disobedience of orders by the servant so intrusted. If such disobedience could be set up by a railroad company as a defense, when charged with negligence, the remedy of the injured party would in most cases be illusive. * * Any relaxation of the stringent policy and principles of the law affecting such cases could be highly detrimental to the public safety." Philadelphia & Reading R. Co. v. Derby, 14 How. 468, [55 U.S. 468], 14 L.Ed. 502.'"
The appellant, in its brief, says:
"In addition, if the defendant, The Hertz Corporation, who is only secondarily liable, is forced to sue the primary wrongdoer for exoneration, the primary wrongdoer would very possibly plea in bar the release or covenant not to sue as a defense to the action. But if such defense were not allowed by the court, we would then have the further possibility that, after the primary wrongdoer reimbursed the defendant, the Hertz Corporation, the primary wrongdoer would then have a cause of action against the injured party for breach of the covenant not to sue or the contract of release, which in turn would bring about a useless circuity of litigation."
Of course, it is impossible for a court to forecast all of the types of actions which might be permitted between litigants when one of the parties obtains a release or covenant not to sue. We can say that a party defendant who is primarily liable could not plead his covenant or release signed by the plaintiff as a defense to an action for indemnification or exoneration brought against him by parties secondarily liable. Nor could the primary wrongdoer thereafter have a cause of action against the injured party for breach of their covenant not to sue or their contract of release resulting from the injured party bringing an action against parties secondarily liable. In other words, a suit by an injured party against a party secondarily liable does not constitute a breach of a covenant not to sue or contract of release entered into between said injured party and the primary wrongdoer. A primary wrongdoer enters such agreements at the peril of being later held to respond again in an indemnification action brought against him by the vicarious wrongdoer.
In the case of Hale v. Adams, Fla.App. 1960, 117 So.2d 524, the First District Court of Appeal, in an opinion by Judge Sturgis, said:
"The rule is also established that the owner of an automobile is liable to a third party for damages resulting from the negligence of the automobile's driver, who is operating with the owner's knowledge and consent, for the reason that the driver's negligence is imputed to the owner. At first blush it might seem logical to conclude from this rule that the owner, as the principal, could not sue the driver, his agent, for negligence because, if the driver's negligence is imputed to the owner, any negligence proven against the driver would be immediately imputed against the owner who would thus be barred from recovery. Such a conclusion is not sound, however, for the simple reason that the doctrine of imputed negligence has no application in an action by a principal against his agent. Also, a defendant should not be permitted to defeat an action on the ground that he was guilty of wrongdoing.
"Counsel on this appeal have cited to us no Florida case, and our independent research has revealed none, in which the question was discussed or determined whether the owner of an automobile *76 can bring an action for negligence against the driver operating it with his knowledge and consent. We join with those jurisdictions which hold that imputation of the driver's negligence to the owner has no application in a suit by the owner against the driver, even though such imputation would be imposed on the owner in a suit brought against him by a third party. [Citations omitted.] The rule announced is in line with the established law of Florida, in which suits by principals against their agents for negligence are generally allowable. * *"
Affirmed.
SMITH, J., and STEPHENSON, GUNTER, Associate Judge, concur.